IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| THE HARRIS WASTE MANAGEMENT GROUP, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CIVIL ACTION 16-0414-WS-N ) |
| HYDRATECH INDUSTRIES FLUID POWER, INC., | ) ) ) ) |
| Defendant. | ) |

### ORDER

This matter is before the Court on the defendant's motion for summary judgment. (Doc. 42). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 43, 44, 46, 47), and the motion is ripe for resolution. After careful consideration, the Court concludes the motion is due to be granted in part and denied in part.

### BACKGROUND

According to the complaint, (Doc. 1), the defendant manufactured and sold to the plaintiff a number of hydraulic cylinders, which the plaintiff incorporated into industrial recycling balers that it sold to end consumers. At least seventeen of the cylinders failed to live up to the express and implied warranties accompanying their sale, and the defendant's efforts at repair and replacement largely failed, such that the warranties' limited remedy failed of its essential purpose. The plaintiff has suffered over $700,000 in damages in repairing and replacing defective cylinders. The complaint's two counts are for breach of express warranty and breach of implied warranty. The parties agree that Alabama law governs. (*Id*. at 7; Doc. 43 at 2, 9-11, 13-14).

## DISCUSSION

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). The moving party may meet its burden in either of two ways: (1) by "negating an element of the non-moving party's claim"; or (2) by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." *Id*. "Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Id*.; *accord Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000); *Sammons v. Taylor*, 967 F.2d 1533, 1538 (11th Cir. 1992).

"When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial. [citation omitted] In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof, no reasonable jury could find for the nonmoving party." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc) (emphasis in original); *accord Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Fitzpatrick*, 2 F.3d at 1116; *accord Mullins*, 228 F.3d at 1313; *Clark*, 929 F.2d at 608.

"If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick*, 2 F.3d at 1116. "If the nonmoving

party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion ….").

In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant …." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003). "Therefore, the plaintiff's version of the facts (to the extent supported by the record) controls, though that version can be supplemented by additional material cited by the defendants and not in tension with the plaintiff's version." *Rachel v. City of Mobile*, 112 F. Supp. 3d 1263, 1274 (S.D. Ala. 2015), *aff'd*, 633 Fed. Appx. 784 (11th Cir. 2016).

There is no burden on the Court to identify unreferenced evidence supporting a party's position.[1] Accordingly, the Court limits its review to the exhibits, and to the specific portions of the exhibits, to which the parties have expressly cited. Likewise, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995); *accord Gennusa v. Canova*, 748 F.3d 1103, 1116 (11th Cir. 2014).

---

[1] Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by … citing to particular parts of materials in the record …."); *id*. Rule 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). "[A]ppellate judges are not like pigs, hunting for truffles buried in briefs," and "[l]ikewise, district court judges are not required to ferret out delectable facts buried in a massive record …." *Chavez v. Secretary, Florida Department of Corrections*, 647 F.3d 1057, 1061 (11th Cir. 2011) (internal quotes omitted).

The Court accordingly limits its review to those arguments the parties have expressly advanced.

**I. Implied Warranty.**

The complaint alleges breaches of implied warranties of merchantability under Alabama Code § 7-2-314 and fitness for a particular purpose under Section 7-2-315. (Doc. 1 at 7). The defendant argues that all such implied warranties were effectively disclaimed in accordance with Section 7-2-316.

With qualifications not implicated here:

> [T]o exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

Ala. Code § 7-2-316(2).

The defendant points to the following provision found within the "General Terms and Conditions of Sale":

> 14. EXCEPT AS EXPRESSLY SET FORTH HEREIN, SELLER MAKES NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, WHICH ARE EXPRESSLY DISCLAIMED. CONTENTS OF THE AGREED SPECIFICATION AND ANY EXPRESSLY AGREED PURPOSE DO NOT CONSTITUTE A GUARANTEE; THE GRANTING OF A GUARANTEE REQUIRES A WRITTEN AGREEMENT.

(Doc, 44-1 at 9; *accord id*. at 16). This language mentions both merchantability and fitness for a particular purpose, as required by Section 7-2-316(2).

"'Conspicuous,' with reference to a term, means so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it." Ala. Code § 7-1-201(10). The general terms and conditions of sale

4

include 24 numbered paragraphs, with each paragraph single-spaced but set off from the preceding and following numbered paragraphs by double spacing or more. Of the 24 numbered paragraphs, only four – 11, 13, 14 and 15 –employ all capitals. The first three of these are found under the boldfaced heading, "**Warranty**," and the last falls under the next boldfaced heading, "**General Restrictions for Liability**." None of these paragraphs is longer than eight lines, and paragraph 14 is five lines.

"Whether a term is 'conspicuous' or not is a decision for the court." Ala. Code. § 7-1-201(10). The plaintiff does not deny that the exclusion of implied warranties described above is conspicuous, and it is comparable to that found adequate in *Money v. Willings Detroit Diesel, Inc.*, 551 So. 2d 926, 927-28 (Ala. 1989). Accordingly, the Court concludes the disclaimer satisfies Section 7-2-316(2).

The plaintiff argues the defendant has failed to establish that the disclaimer is identical as to all 22 cylinders the plaintiff purchased between 2011 and 2013. (Doc. 46 at 12-13; Doc. 46-1 at 3). The affidavit through which the general terms and conditions were submitted, however, states explicitly that the same general terms and conditions have governed each sale of a cylinder to the plaintiff, with the only difference in the form over time being a change in the defendant's name. (Doc. 44-1 at 3). The plaintiff ignores this testimony and offers no contradictory evidence of its own. The defendant's evidence therefore stands uncontroverted.[2]

The plaintiff similarly argues the defendant has failed to establish that the disclaimer is identical as to every repaired cylinder. (Doc. 46 at 13). The plaintiff has presented evidence that repaired cylinders came "with our standard one-year

---

[2] The plaintiff objects that the quote to which the general terms and conditions were attached expired in May 2011 and so could not govern later purchases. (Doc. 46 at 13). The life of the quote, however, is irrelevant; the question is what terms and conditions governed, and the uncontroverted evidence is that the same terms and conditions regarding implied warranties, in the same conspicuous format, applied to all sales.

warranty when the repair is completed," (Doc. 46-1 at 4, 14), and each of the three attached quotes attaches general terms and conditions. (*Id*. at 14-29). The plaintiff therefore has evidence that repaired cylinders were not governed by the original general terms and conditions accompanying their sale but by new general terms and conditions accompanying their repair. Moreover, the quote for one such repair attaches a version of the general terms and conditions that contains a disclaimer of implied warranties which is patently less conspicuous than the disclaimer accompanying sales. (*Id*. at 26-29). The defendant does not in its reply effectively address the plaintiff's argument or evidence,[3] and without doing so it cannot meet its burden of showing that it effectively disclaimed implied warranties as to all repaired cylinders.

Because, under the uncontroverted facts, the defendant effectively disclaimed any implied warranty as to each sale of a cylinder to the plaintiff, it is entitled to summary judgment as to this portion of the plaintiff's implied warranty claim. However, because the defendant has not shown that it effectively disclaimed any implied warranty as to each repair of a cylinder it had previously sold the plaintiff, it is not entitled to summary judgment as to this portion of the plaintiff's claim.

**II. Express Warranty.**

The only express warranties provided by the defendant are the following:

> 11. SELLER WARRANTS THAT THE GOODS COVERED HEREBY WILL AT THE TIME OF SHIPMENT, AND CONTINUING FOR ONE YEAR FROM SUCH DATE, BE FREE FROM MATERIAL DEFECTS IN MATERIALS AND WORKMANSHIP AND WILL CONFORM TO THE DESCRIPTION AND SPECIFICATIONS, IF ANY, AGREED UPON BY PURCHASER AND SELLER; PROVIDED THAT THE GOODS ARE INSTALLED AS SPECIFIED BY SELLER, MAINTAINED PER SELLER'S

---

[3] The defendant says the most recent general terms and conditions contain "the same material provisions," (Doc. 47 at 7 n.1), but it does not address the disclaimer's conspicuousness *vel non*.

INSTRUCTIONS, AND OPERATED STRICTLY WITHIN SELLER'S PERFORMANCE SPECIFICATIONS.

(Doc. 44-1 at 9; *accord id*. at 16). There are thus three warranties: (1) freedom from defects in materials; (2) freedom from defects in workmanship; and (3) conformity to agreed specifications.

The defendant addresses the first and second warranties in a single sentence, asserting that "the evidence does not indicate that the cylinders … suffered from 'material defects in materials and workmanship.'" (Doc. 43 at 12). For this proposition, the defendant relies exclusively on five lines from a former employee's deposition, but his testimony does not address the first or second warranty but only the third warranty. (Doc. 44-2 at 45). The defendant thus has failed to satisfy its threshold burden of pointing to record evidence that either negates the existence of a material defect in materials and/or workmanship or demonstrates the plaintiff will be unable to produce at trial any evidence of such a defect.

In its reply brief, the defendant insists it must prevail because the plaintiff "present[s] no evidence" of a material defect in materials or workmanship. (Doc. 47 at 1, 8-9, 11). The defendant misapprehends the parties' burden on motion for summary judgment. As discussed above, until and unless the defendant meets its initial burden, the plaintiff need not make any showing at all. Because the defendant has not met its initial burden, "the motion must be denied and the court need not consider what, if any, showing the [plaintiff] has made." *Fitzpatrick*, 2 F.3d at 1116.

As to the third warranty, the defendant focuses on offering evidence that both parties participated in the cylinders' design, with the plaintiff providing specs and/or drawings, the defendant drafting a design based on that information, and the parties thereafter in consultation until final agreement was reached, with the approved design later modified at least once, by agreement, in light of real-world experience. (*Id*. at 6-7). The plaintiff offers evidence that it looked only for form,

fit and function, did not collaborate in the cylinders' design, and did not approve the actual design regardless how defective. (Doc. 46 at 7, 9). Because the defendant does not explain, and the Court does not perceive, how the plaintiff's asserted participation in/approval of the cylinders' design could defeat its warranty claim given the language of the warranty, the Court does not consider the matter further.

The defendant's argument regarding the third warranty is confined to a few sentences. (Doc. 43 at 12). The defendant acknowledges there were cylinder failures,[4] but it says they occurred because "the design specifications provided to [the defendant] did not align with the actual operation of the cylinders in the field." (*Id*.). That is, the defendant claims that the cylinders "conform[ed]" to the plaintiff's specifications (thereby satisfying the warranty) but that those specifications resulted in failure because they did not match the real-world conditions in which the plaintiff's buyers operated the cylinders. (*Id*.).

The defendant identifies two ways in which the plaintiff's specifications were out of step with its customers' usage. (Doc. 43 at 12). First, because the plaintiff failed to specify that pressure would be applied from both sides, the defendant used a seal designed to withstand pressure only from one side, which led to seal failure in two or three cylinders before the design was changed. (*Id*.; Doc. 44-3 at 22-23). Second, the plaintiff specified a certain run speed, but the cylinders in the field ran at faster speeds, which could cause some of the issues observed. (Doc. 43 at 12; Doc. 44-2 at 10-13; Doc. 44-3 at 22-23).

There are a number of problems with the defendant's argument. First, the evidence is that at least a dozen cylinders failed within the warranty period, (Doc. 46-1 at 3), and the defendant has not shown that the two circumstances identified in the preceding paragraph were in play as to all of them. Second, the defendant's

---

[4] According to the plaintiff's evidence, more than half the 22 cylinders it purchased during the period covered by this lawsuit failed within the warranty period to operate to the specifications the plaintiff provided the defendant. (Doc. 46-1 at 3). According to the complaint, at least seventeen did so. (Doc. 1 at 4).

8

only evidence of excessive speed comes from an inspection visit to a particular customer, and the excessive speeds were observed in testing mode (when nothing is being compressed), not in normal operational mode, when speeds are lower. (Doc. 44-2 at 10-13; Doc. 46-3 at 32-33). Third, the defendant acknowledges there were additional warranty issues, which it does not address, including several instances in which the piston backed off the rod and which damage the defendant covered under its warranty. (Doc. 43 at 7 n.3). Fourth, while the defendant offers (scant) evidence the cylinders met the plaintiff's specifications, (Doc. 44-2 at 45), the plaintiff offers (equally scant) evidence they did not. (Doc. 46-1 at 3).

In its reply brief, the defendant again charges the plaintiff with failing to produce evidence supporting its claim. (Doc. 47 at 1, 8-9, 11). As before, given the defendant's failure to satisfy its initial burden of pointing to record evidence either negating a breach of warranty or of showing the plaintiff cannot produce evidence of breach at trial, the defendant's motion must be denied regardless of the strength or weakness of the plaintiff's showing.

Based on the parties' limited and somewhat cryptic briefing and evidentiary submissions, the defendant's motion for summary judgment as to the express warranty claim is due to be denied.

### III. Limitation of Remedy.

The complaint alleges that the plaintiff has "suffered damages in excess of $700,000 in repairing and replacing defective cylinders." (Doc. 1 at 2). The defendant argues that it effectively limited the plaintiff's remedy to repair, replacement or refund, such that the plaintiff cannot recover the claimed damages. (Doc. 43 at 2, 12, 14-15).

"Remedies for breach of warranty can be limited in accordance with the provisions of this article on … limitation of damages and on contractual modification of remedy (Sectio[n] … 7-2-719)." Ala. Code § 7-2-316(4). "The agreement … may limit or alter the measure of damages recoverable under this

9

article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts …." *Id*. § 7-2-719(1)(a). "Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable[, and] [l]imitation of [consequential] damages where the loss is commercial is not … prima facie unconscionable." *Id*. § 7-2-719(3). "Resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy." *Id*. § 7-2-719(1)(b).

The general terms and conditions provide as follows:

> 13. PURCHASER'S EXCLUSIVE REMEDY AND SELLER'S LIABILITY HEREUNDER, EITHER FOR BREACH OF WARRANTY OR FOR NEGLIGENCE, IS EXPRESSLY LIMITED, AT THE OPTION OF SELLER: (A) TO THE REPLACEMENT AT THE AGREED POINT OF DELIVERY OF THE PRODUCTS; (B) TO THE REPAIR OF SUCH PRODUCTS OR WORK; OR (C) TO THE REFUND OR CREDITING TO CUSTOMER OF THE PRICE OF SUCH PRODUCTS OR WORK. THE REMEDY OF PURCHASER CONTAINED HEREIN SHALL BE EXCLUSIVE OF ANY OTHER REMEDY OTHERWISE AVAILABLE TO PURCHASER.
> …
> 15. SELLER'S LIABILITY, WHETHER IN CONTRACT, IN TORT, UNDER WARRANTY, IN NEGLIGENCE OR OTHERWISE, SHALL NOT EXCEED THE PURCHASE PRICE OF THE GOODS SOLD, AND UNDER NO CIRCUMSTANCES SHALL SELLER BE LIABLE FOR ANY SPECIAL, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES INCLUDING, BUT NOT LIMITED TO, DEMURRAGE CHARGES, COST OF SHIPMENT, DOWNTIME, LOST PROFITS, OR LOST SALES.

(Doc. 44-1 at 9; *accord id*. at 16). The plaintiff does not dispute that this language is adequate under the provisions of Section 7-2-719 quoted above to limit its remedies to repair, replacement or refund. Instead, the plaintiff invokes an exception to the validity of such limitations: "Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this title." Ala. Code § 7-2-719(2).

10

The plaintiff's evidence describes the following pattern, consisting of three repeating elements. First, the plaintiff would purchase a new cylinder, incorporate it into a baler, and sell the finished product to a customer. In less than a year, the cylinder would fail to operate to agreed specifications and require repair. The plaintiff would return the cylinder to the defendant for repair, leaving the customer without a functioning baler. To get the baler running while the cylinder was being repaired, the plaintiff would send the customer a new cylinder. This would be a cylinder the plaintiff had purchased from the defendant for incorporation into a new baler, such that its diversion to an existing customer would prevent the plaintiff from filling new orders. (Doc. 46-1 at 3-4).

Second, the defendant would inspect the returned cylinder and provide the plaintiff a quote or invoice reflecting the cost to repair the cylinder, which could be $20,000 or more, for what the defendant called "custom repair" but which really was warranty work.[5] To keep its customers satisfied, the plaintiff would pay the requested amount and the defendant would perform the repairs. (Doc. 46-1 at 3-4, 15, 22, 27).

Third, the repaired cylinders would be returned to a customer (not necessarily the original customer), where they would within a year again fail to operate to agreed specifications. Likewise, the new, replacement cylinders would similarly fail within a year. As to one baler, five cylinders failed in the space of barely two years. (Doc. 46-1 at 4-5).

It appears unlikely the plaintiff can avoid the limitation on remedies by resort to the first scenario. The warranty gave the defendant the option of repair, replacement or refund, and it chose repair. Repairs take time, such that a necessary consequence of that remedy is the consumer's loss of use of the product for the period of repair. The plaintiff understandably elected to assist its

---

[5] While the defendant offers evidence that it performed warranty work for free and charged the plaintiff only for upgrades to the design current when the repairs were performed, on motion for summary judgment the Court must accept the plaintiff's version of the evidence.

customers by sending them replacement cylinders so as to minimize their downtime, but it acted merely in response to what it at all times knew, or should have known, would be the unavoidable result of a cylinder needing repair. It would seem improbable in the extreme that the remedy of repair could fail of its essential purpose (that is, repair) simply because the process of repair necessarily causes downtime and/or the cost of avoiding downtime. The plaintiff advances no argument to the contrary.

Less clear is whether the remedy of repair failed of its essential purpose because the defendant required the plaintiff to pay for repairs that should have been covered for free by the warranty. More problematic still is whether the remedy failed of its essential purpose because the repaired cylinders again failed to operate up to agreed specifications or because a succession of new cylinders failed to do so. *See, e.g., Barko Hydraulics, LLC v. Shepherd*, 167 So. 3d 304, 311 (Ala. 2014) ("Given the numerous attempts at repair over the extended period, the jury could properly have concluded that the 495L loader had not been repaired and that the warranty had failed of its essential purpose."); *id*. at 311 n.4 (citing cases regarding repeated failures to repair). None of the cases cited by the defendant address circumstances remotely akin to those presented here, and the Court will not search for more relevant precedents on the defendant's behalf.[6]

The defendant argues in its reply brief that the plaintiff must track the history of each cylinder separately and show that the remedy failed of its essential purpose as to that particular cylinder. (Doc. 47 at 10). The suggestion is not implausible but, because the defendant offers no authority in support of the assertion, the Court does not embrace it. Even were the Court to do so, however, it would not assist the defendant. Again, this is the defendant's motion for summary judgment, so it bears the initial burden. Because the defendant has

---

[6] To the uncertain extent the defendant suggests that a remedy fails of its essential purpose only if the seller "refuses" to provide the remedy, the Court rejects the suggestion as incompatible with numerous precedents, including *Barko*.

failed to trace the history of any particular cylinder, it has neither negated a failure of essential purpose as to any particular cylinder nor shown that the plaintiff cannot prove such a failure as to any particular cylinder.

**CONCLUSION**

For the reasons set forth above, the defendant's motion for summary judgment is **granted** with respect to the plaintiff's claim for breach of implied warranty, to the extent that claim is based on a warranty accompanying the original sale of any cylinder. In all other respects, the defendant's motion is **denied**.

DONE and ORDERED this 1st day of December, 2017.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE